UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAN P2 PROMOTIONS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT BROTHERS, INC., a California corporation; COREY WRIGHT, an individual; and CASEY WRIGHT, an individual,<br><br>Defendants. | Case No.: 16-CV-2795 JLS (AGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 24) |

Presently before the Court is Defendants Wright Brothers, Inc.'s, Corey Wright's, and Casey Wright's Motion to Dismiss First Amended Complaint, ("MTD," ECF No. 24). Also before the Court are Plaintiff Plan P2 Promotions, LLC's ("PPP") Response in Opposition to, ("Opp'n," ECF No. 30), and Defendants' Reply in Support of, ("Reply," ECF No. 32), Defendants' MTD. The Court vacated the hearing on the motion and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 33.) After considering the parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' MTD.

/ / /

## BACKGROUND

Plaintiff PPP designs, markets, distributes, and sells bobbleheads. (FAC ¶ 14, ECF No. 15.) One such bobblehead is known as the Donald Trump Red Hat Bobblehead (the "PPP Work"), which Plaintiff published on October 27, 2015. (*Id.* ¶ 15.) Plaintiff filed an application for the registration of the PPP Work on October 19, 2016 with the United States Copyright Office. (*Id.*; *see also id.* Exs. 1, 2.) The following is a photocopied image of the complete PPP Work:



(*Id.*)

Plaintiff argues that Defendants have reproduced, prepared derivative works, and distribute or have distributed unauthorized copies of the PPP Work to the public by selling two of their own bobbleheads ("Defendant Work 1" and "Defendant Work 2"). (*Id.* ¶ 16.)

A side-by-side comparison of the PPP Work and Defendant Work 1 and Defendant Work 2 is reproduced below:





(*Id.*)

On or around October 20, 2016, Plaintiff sent notices to internet service providers indicating that Defendants' infringing work was being advertised and sold on the service providers' respective sites, and demanding that those advertisements be taken down pursuant to the Digital Millennium Copyright Act ("DMCA"). (*Id.* ¶ 17.) Plaintiff alleges that Defendants shifted their advertising and sales to other platforms and outlets to avoid the impact of these DMCA notices. (*Id.*)

In addition to copyright infringement, Plaintiff alleges that Defendants have engaged in false advertising. (*Id.* ¶ 18.) Specifically, Plaintiff alleges that Defendants falsely advertised in various media that their products were sponsored or otherwise affiliated with the Trump/Pence Presidential campaign (using the Trump/Pence campaign logo on websites and other advertisements; indicating that a copyright for their website was owned by or affiliated with Trump; and stating in their advertisements that Defendants' bobbleheads were "The official bobblehead doll of the 2016 Donald Trump Presidential campaign"). (*Id.*) Plaintiff alleges that neither Trump nor the Trump/Pence campaign authorized the sale of or had any association with Defendants' works. (*Id.*)

Furthermore, Plaintiff alleges that Defendants falsely advertised the sale of Defendant Work 2 but, when consumers actually ordered Defendant Work 2, Defendants actually shipped Defendant Work 1. (*Id.* ¶ 20.) Plaintiff alleges that this was in an effort to disguise the blatant copying of the PPP Work (since Plaintiff alleges that Defendant Work 1 looks more similar to its work than Defendant Work 2). (*Id.* ¶ 19.) Nevertheless, Plaintiff alleges that both of Defendants' works infringe its PPP Work. (*Id.*)

Plaintiff brings three claims against Defendants based on these allegations: (1) copyright infringement against Defendant Wright Brothers, Inc.; (2) copyright infringement against Defendant Casey Wright and Defendant Corey Wright; and (3) false advertising against all Defendants. (*See generally id.*) Plaintiff seeks injunctive relief, impoundment of all counterfeit and infringing copies of the PPP Work, and general, special, actual, and statutory damages. (*Id.*)

# LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-

///

///

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Defendants move to dismiss Plaintiff's FAC on two principal grounds with several sub-arguments in each: (I) Plaintiff's Lanham Act claim fails; and (II) Plaintiff has no basis to seek fees or statutory damages under the Copyright Act. (*See generally* MTD, ECF No. 24-1.) The Court addresses each argument in turn.

### I. Plaintiff's Lanham Act Claim

Defendants move to dismiss Plaintiff's Lanham Act claim on various grounds: (A) Plaintiff's allegations supporting its false advertising claim under the Lanham Act must meet Rule 9(b)'s heightened pleading standard; (B) Plaintiff fails to allege false advertising under Rule 9(b); and (C) even if Plaintiff's allegations survive Rule 9(b), its Lanham Act claim still fails for other reasons. (*See id.* at 13–26.[1]) The Court considers each argument in turn.

#### *A. Whether Rule 9(b) Applies to Plaintiff's Lanham Act Claim*

Defendants argue that while the Ninth Circuit has yet to decide whether Rule 9(b) applies to Lanham Act claims, several district courts in the Ninth Circuit have applied Rule 9(b) to false advertising claims brought under the Lanham Act because such claims are

///

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

grounded in fraud. (MTD 13–16, ECF No. 24-1.) Plaintiff responds that other courts regularly apply Rule 8 to Lanham Act cases. (Opp'n 21, ECF No. 30.)

As to this threshold matter, the Court agrees with the weight of authority that Rule 9(b) applies to Lanham Act claims that are grounded in fraud. Courts apply a heightened pleading standard to actions that sound in fraud pursuant to Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba-Geigy Corp.*, *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). Rule 9(b) is not limited to claims for fraud itself; rather, it applies if a claim is "grounded in" or "sounds in" fraud. *See, e.g.*, *Vess*, 317 F.3d at 1103–04 ("In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."). It thus follows that a false advertising claim under the Lanham Act that is "grounded in" or "sounds in" fraud must meet the heightened pleading standards of Rule 9(b). *See, e.g.*, *Seoul Laser Dieboard Sys. Co., Ltd. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1200 (S.D. Cal. 2013) ("District courts in the Ninth Circuit have held that the heightened pleading standard of Federal Rule of [Civil] Procedure 9(b) applies to false advertising claims and requires the plaintiff to plead the 'time, place, and specific content of the false representations,' the identities of the parties to the misrepresentation, and what about the statement is claimed to be misleading.").

Plaintiff's allegations in support of its Lanham Act claim are grounded in fraud. Specifically, Plaintiff alleges that (1) Defendants changed their advertising to display a picture of a product "modified to make it appear like a less blatant copy," (FAC ¶ 43, ECF No. 15); (2) advertised and sold bobbleheads "under false pretenses," (*id.* ¶ 44); (3) "committed false advertising and used false descriptions," (*id.* ¶ 45); and (4) advertised "a

product which the Defendants did not own, and were not authorized to sell," (*id.* ¶ 46). Accordingly, the Court concludes that Rule 9(b) applies to Plaintiff's Lanham Act claim.

### B. Whether Plaintiff's Lanham Act Allegations Satisfy Rule 9(b)

Defendants argue that Plaintiff's allegations fail to satisfy Rule 9(b). (MTD 16–19, ECF No. 24-1.) Plaintiff responds that its allegations survive under Rule 9(b). (Opp'n 21–25, ECF No. 30.)

The Court partially agrees with Plaintiff. Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct). Most of Plaintiff's allegations have done just that.

Plaintiff alleges that Defendants collectively made false statements. (FAC ¶¶ 1, 10, 11, 48, 49, ECF No. 15.) The false statements were (1) that Defendants advertised Defendant Work 2 in response to the takedown notices, but actually shipped Defendant Work 1 to customers, (*id.* ¶¶ 2, 20); and (2) Defendants' unauthorized use of the Trump/Pence Presidential Campaign, copyright notice of "© Donald J. Trump," and claims that their bobblehead is the "official bobblehead doll of the 2016 Donald Trump Presidential campaign," (*id.* ¶¶ 4, 5, 6, 45). Plaintiff put Defendants on notice of these allegedly fraudulent advertising practices in October 2016, when it sent DMCA takedown notices to various internet service providers regarding Defendant Work 1, which prompted Defendants to start advertising and allegedly selling Defendant Work 2. (*Id.* ¶ 43). S*ee Cooper*, 137 F.3d at 627 (noting, in the Rule 9(b) context, that courts "do not require a specific number [of shipments] or a precise time frame"). Finally, Plaintiff alleges that the false advertisements occurred through various internet service providers, (*id.* ¶¶ 17, 18, 43, 45), and on Defendants' websites, (*id.* ¶¶ 4, 5, 45). This is enough to give Defendants fair
///

notice of the alleged fraudulent conduct so that they can adequately defend against the charge.

But this conclusion does not apply to Plaintiff's allegations that Defendants used Plaintiff's pictures of its own bobblehead to sell Defendants' bobbleheads. (*See, e.g.*, *id.* ¶ 46). Plaintiff simply alleges that "at times, Defendants have advertised their bobble head products using actual pictures of the PPP Work." (*Id.*) This bare allegation is wholly insufficient under Rule 9(b). Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** this portion of Defendants' MTD.

### *C. Whether Plaintiff's Lanham Act Claim Fails for Other Reasons*

Defendants argue that even if Plaintiff's allegations survive analysis under Rule 9(b), Plaintiff's Lanham Act claim fails for five additional reasons: (1) Plaintiff fails to allege standing to pursue a Lanham Act claim under *Lexmark International, Inc. v. Static Components, Inc.*, 134 S. Ct. 1377 (2014); (2) the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), bars Plaintiff's copyright-masked-as-Lanham-Act claim; (3) the Copyright Act does not provide a private right of action for false copyright notice; (4) Plaintiff fails to allege or explain why any of the things it claims are deceptive are "material" under the Lanham Act; and (5) the representations of association between Defendants and the Trump organization are opinion, not actionable facts. (*See* MTD 21–26, ECF No. 24-1.) The Court considers each argument in turn.

#### *1. Standing under* Lexmark

Defendants argue that Plaintiff has not adequately alleged proximate causation and thus fails to establish that it has standing to pursue a Lanham Act claim. (*Id.* at 21.) Plaintiff disagrees. (Opp'n 16–17, ECF No. 30.)

The Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Lexmark*, 134 S. Ct. at 1388 (quoting 15 U.S.C. § 1125(a)(1)). "Under the Lanham Act, a prima facie case requires a showing that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement

9

actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008) (internal quotation marks omitted).

Additionally, the *Lexmark* Court determined that a plaintiff seeking to pursue a Lanham Act claim must demonstrate standing beyond the typical Article III requirements. *Lexmark*, 134 S. Ct. at 1388–89. First, a plaintiff must demonstrate that it falls within the "zone of interests" protected by the Lanham Act. *Id.* "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 1390. Second, a plaintiff must demonstrate that its injuries are proximately caused by violation of the Lanham Act. *Id.* at 1390–91. Specifically, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

Defendants do not argue that Plaintiff fails to fall within the zone of interests protected by the Lanham Act. Rather, Defendants argue that Plaintiff fails to allege proximate causation because there is no allegation that it suffered any kind of reputational or economic injury as a result of the conduct alleged. (MTD 21, ECF No. 24-1.)

The Court agrees with Defendants. Plaintiff responds that Defendants' false advertising has caused it to suffer damages and that it is entitled to recover Defendants' profits from sales stemming from their wrongful conduct. (Opp'n 17, ECF No. 30 (citing FAC ¶¶ 35, 50, ECF No. 15).) But the allegations in Plaintiff's FAC merely state that Defendants have, for instance, engaged in false advertising by falsely claiming to be associated with the Trump organization, (FAC ¶ 45, ECF No. 15), and this has somehow caused Plaintiff to suffer damages, (*id.* ¶ 50). There are no more specific allegations of, at

the very least, lost sales or damage to its reputation. This is insufficient to plead proximate causation to support a Lanham Act claim. *See, e.g.*, *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) ("At the pleading stage, a plaintiff <u>must allege</u> 'an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations.'" (emphasis added) (quoting *Lexmark*, 134 S. Ct. at 1395)).

To be sure, Plaintiff argues that "if one product is the 'official' product, every other product is unofficial and therefore inferior. Consumers in the market are likely to choose the official product over the unofficial one and thus Defendants, through their false advertising campaign, have diverted sales from the Plaintiff . . . ." (Opp'n 17, ECF No. 30.) The Court finds that such allegations might be sufficient to bridge the gap between Defendants' alleged false advertising and Plaintiff's alleged damages, thus plausibly alleging proximate cause at the pleading stage. The problem, of course, is that these allegations do not appear in the FAC, and thus are beyond the scope of the Court's review. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original)). Accordingly, the Court **GRANTS** this portion of Defendants' MTD.

2. *Whether* Dastar *bars relief*

Second, Defendant argues that "to the extent the Lanham Act claim is predicated upon the notion that Defendants failed to provide proper attribution for the design or creation of what is clearly a communicative good (*i.e.*, a claim for reverse passing off), *Dastar* controls, and the claim is barred." (MTD 23, ECF No. 24-1.) Plaintiff argues that Defendants' reliance on *Dastar* is misplaced because *Dastar* only prohibits claims brought under the Lanham Act where there is a misrepresentation of the authorship of the goods at issue, which thus does not preclude Plaintiff's claim based on false endorsement. (Opp'n 18–19, ECF No. 30.)

The Court agrees with Plaintiff. In *Dastar*, the Supreme Court considered "whether § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prevents the unaccredited copying of a work." *Dastar*, 539 U.S. at 25. The case concerned a company, petitioner Dastar, which purchased copies of a television series in the public domain, copied them, edited the series, and then sold the edited series as its own product without reference to the original series. *Id.* at 26–27. Respondents Fox, SFM, and New Line argued that Dastar's sales of its edited video set "without proper credit" to the original television series constituted "reverse passing off" (i.e., a producer misrepresenting someone else's goods as his own) in violation of § 43(a) of the Lanham Act. *Id.* at 27. The gravamen of the claim, under the Lanham Act, was that Dastar made a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods." *Id.* at 31 (quoting 15 U.S.C. § 43(a)). The Court rejected respondents' claim under the Lanham Act, concluding that the phrase "origin of goods" refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* The Court noted that "[t]o hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.* The Court thus concluded that Dastar was the "origin" of the products it sold as its own, and thus respondents' Lanham Act claim failed. *Id.* at 38.

Here, Plaintiff's claim for false advertising does not include any allegation of reverse passing off (i.e., that Defendants are not the manufacturers of the goods they offer on their website). Nor does Plaintiff's false advertising claim have anything to do with the manufacturer of Defendants' goods. (Opp'n 19, ECF No. 30.) Rather, among other things, Plaintiff alleges that Defendants misrepresented that their goods were somehow endorsed by the Trump organization as an "official" product of the campaign. The Court agrees with Plaintiff that this claim of false endorsement is unrelated to the authorship or origin of Defendants' bobbleheads, and thus *Dastar* does not bar Plaintiff's Lanham Act claim. (*Id.*)

///

And Defendants do not contest Plaintiff's arguments in their Reply. (*See generally* Reply, ECF No. 32.) Accordingly, the Court **DENIES** this portion of Defendants' MTD.

### 3. Plaintiff's reliance on an allegedly false copyright notice

Third, Defendants argue that "to the extent Plaintiff complains of Defendants using an alleged false copyright notice, such a claim must fail because the Copyright Act covers that kind of activity, but does not allow for a private right of action." (MTD 23, ECF No. 24-1 (citing 17 U.S.C. § 506(c) (criminalizing fraudulent use of copyright notice), *Donald Frederick Evans v. Continental Homes, Inc.*, 785 F.2d 897, 912–13 (11th Cir. 1986) (holding that there is no private right of action under 17 U.S.C. § 506(c), which was intended to be only a criminal statute).)

The Court agrees with Defendants on the law, but Defendants' argument misses the mark. Plaintiff is not asserting a claim for alleged misuse of a copyright notice. (Opp'n 19, ECF No. 30.) Rather, Plaintiff's *false advertising* claim is partially premised on "Defendants' false use [of] a copyright notice as part and parcel of [their] overall false advertising message—e.g.[,] our product is the 'official' product of the Donald Trump campaign." (*Id.*) So cabined, neither Section 506(c) nor *Donald Frederick Evans* bar Plaintiff's reliance on the misleading copyright notice as part of Defendants' overall false advertising scheme. *Cf. TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827–29 (9th Cir. 2011) (affirming district court holding that falsely suggesting an affiliation with the California DMV was misleading to consumers under the Lanham Act). Accordingly, the Court **DENIES** this portion of Defendants' MTD.

### 4. Whether the "materiality" of the alleged misrepresentations are plausible

Fourth, Defendants argue that "Plaintiff fails to allege or explain why any of the things that it claims are supposedly deceptive are 'material.'" (MTD 24, ECF No. 24-1.) For instance, Defendants argue "so what" if some customers who thought they were ordering Defendant Work 2 (where Trump is mounted on a black base with the words "DONALD TRUMP") instead actually received Defendant Work 1 (where Trump is mounted on a white and bronze base with a ribbon depicting the words "Trump '16")—the

main idea motivating the purchase of the bobblehead is the same regardless of these subtle variations. (*Id.*) But the Court agrees with Plaintiff that this argument skirts the allegation that literally false statements (and images) were used to market Defendants' bobbleheads, and thus these allegations are presumed to have deceived consumers. (Opp'n 13, ECF No. 30 (citing, e.g., *Avid Identification Sys., Inc. v. Schering-Plough Corp.*, 33 F. App'x 854, 856 (9th Cir. 2002) ("Because these representations were literally false, the statements carry with them the presumption that consumers relied on and were deceived by them.")); *see also id.* n.3.) Defendants will have an opportunity to attack the materiality of these statements at a later phase of the case—but not now. Accordingly, the Court **DENIES** this portion of Defendants' MTD.

### 5. Whether the represented associations with the Trump organization are opinions or actionable facts

Finally, Defendants argue that "to the extent the Lanham claim is predicated upon the supposedly false association between the Defendants and the Trump organization, or upon attributing copyright ownership to 'Donald J. Trump,' those statements are opinions, not actionable facts." (MTD 24–25, ECF No. 24-1 (citing, e.g., *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731–32 (9th Cir. 1999); *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437, 452 (E.D. La. 2011)).)

In the present case, "[l]iability under the relevant provision of the Lanham Act requires, among other things, a 'false or misleading *representation of fact*.'" *Coastal*, 173 F.3d at 730 (emphasis in original) (quoting 15 U.S.C. § 1125(a)(1)). Statements that amount merely to "puffery" do not qualify as statements of fact capable of being proven false. *Id.* at 731 (concluding that the statement that Coastal was "too small" to handle business was puffery). An actionable fact is one that is "capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Id.* at 731; *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) ("A specific and measurable advertisement claim of product superiority based on product testing is not puffery."). Courts may determine as a matter of law whether certain statements are

statements of fact, actionable under the Lanham Act, or mere puffery, and may do so at the motion to dismiss stage. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

None of Defendants' cited cases support their argument. In *Coastal*, the Ninth Circuit considered whether First American's statement that Coastal did not have an escrow license was actionable under the Lanham Act, since California Financial Code § 17200 makes it unlawful to engage in business as an escrow agent without an appropriate license. 173 F.3d at 731. First American's statement thus clearly implied that § 17200 required Coastal to have a license for its activities. *Id.* The court noted that "statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact," *id.*, and that "the correct application of § 17200 was not knowable to the parties at the time that First American made the licensure statement." *Id.* at 732. Thus, the Court concluded that "the licensure statement as a matter of law could not give rise to a Lanham Act claim." *Id.*

There is no statute to interpret in assessing the claimed association with the Trump organization. Rather, Plaintiff alleges that Defendants claimed that they were the official bobblehead of the Trump campaign and that Trump copyrighted their website. Whether or not the Trump organization did, in fact, sponsor Defendants' bobbleheads or claim copyright in the website are "knowable" facts, not opinions. Accordingly, *Coastal* is inapplicable.[2]

Nor does Defendants' reliance on *Southern Snow* fare any better. In *Southern Snow*, the court considered whether the use of a "TM" symbol next to the term "Vanilla" was an opinion or fact for purposes of a the Lanham Act claim. 829 F. Supp. 2d at 452. The Court considered the issue at length, concluding that

---

[2] True, there is a statute governing copyrights and their registrations, *see* 17 U.S.C. § 101, *et seq.*, but, as discussed below, a claim of copyright can be verified and thus is arguably a statement of fact actionable under the Lanham Act.

15

Vanilla™ does not make a statement that admits of being adjudged true or false in a way that "admits of empirical verification." Vanilla™ makes the statement that the party is claiming rights to the flavor name as a trademark, as preposterous as that assertion might be. But the TM symbol does not mean that the party has trademark rights in the name or can ensure that the mark is capable of serving as a trademark or that the party could meet its burden of proof as to secondary meaning if a court were so indulgent so as to allow a party to try. Vanilla™ might be described as an oxymoron but it is not a literally false statement.

*Id.* at 453–54. The Court also contrasted the use of a generic "TM" symbol with the ® symbol, which connotes federal registration. As the Court explained:

> In order to determine if "Vanilla ™" is actionable as a literally false statement, it is necessary to ascertain exactly what information or statement can fairly be attributed to placing a ® or TM next to any product name. With respect to the ® symbol the answer is clear. The owner of a trademark registered in the USPTO may give notice that his mark is registered by displaying "the letter R enclosed within a circle, thus ®." 15 U.S.C.A. § 1111 (West 2009). Improper use of a registration notice in connection with an unregistered mark may be grounds for denying the registration of an otherwise registerable mark. *Copelands' Enters., Inc. v. CNV, Inc.*, 945 F.2d 1563, 1566 (Fed. Cir. 1991) (*citing Fed. Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1101 (C.C.P.A. 1976)). Thus, use of the ® symbol conveys to the customer and to other competitors that the trademark is in fact registered with the USPTO.
>
> . . .
>
> Given that use of the ® symbol makes an affirmative statement that the USPTO has registered the symbol, it is plausible that a literally false statement is being made when a party appends the ® symbol to a mark that is *not* federally registered. Appending the ® statement to a mark makes a statement that admits of being adjudged true or false in a way that "admits of empirical verification." *Pizza Hut*, 227 F.3d at 496. So unauthorized use of

> the ® could perhaps form the basis for making a literally false statement.

*Id.* at 452–53.

Though unclear, Defendants presumably rely on *Southern Snow* to argue that their use of a copyright symbol in connection with the Trump organization's copyright of their website is opinion, not actionable fact. To be sure, copyright protection exists without federal registration, so long as it is an original work of authorship fixed in a tangible medium of expression. 17 U.S.C. § 102(a). In that sense, saying that something is copyrighted is arguably akin to using the generic "TM" symbol to express an opinion of ownership of rights. And unlike the ® symbol, affixing the symbol © is permissive and does not require federal registration.[3] *See* 17 U.S.C. § 401(a) ("Whenever a work protected under this title is published in the United States or elsewhere by authority of the copyright owner, a notice of copyright as provided by this section <u>may be placed</u> on publicly distributed copies from which the work can be visually perceived, either directly or with the aid of a machine or device." (emphasis added)); *id.* § 401(b)(1) ("If a notice appears on the copies, it shall consist of . . . the symbol © (the letter C in a circle), or the word 'Copyright', or the abbreviation 'Copr.'; and . . . .").

But there is a conceptual difference between this case and a case like *Southern Snow*. In *Southern Snow*, the plaintiff's use of the TM symbol in Vanilla ™ demonstrated its belief in *its own* alleged rights in the term. Here, in contrast, Defendants claim that *someone else* (the Trump organization) claims some right (a copyright) in, among other things, Defendants' website. Whether or not the Trump organization does, in fact, *claim* to have such copyrights is an ascertainable fact and thus is actionable under the Lanham Act. Indeed, the Copyright Act expressly provides criminal penalties for a false claim of

---

[3] However, fixation of copyright notice also provides certain federal benefits, *see, e.g.*, 17 U.S.C. § 401(d) (providing that proper copyright notice negates a defense of innocent infringement), and thus it shares similarities with federal trademark registration.

copyright protection, and such claims can be verified.[4] *See* 17 U.S.C. § 506 ("Any person who, with fraudulent intent, places on any article a notice of copyright or words of the same purport that such person knows to be false, or who, with fraudulent intent, publicly distributes or imports for public distribution any article bearing such notice or words that such person knows to be false, shall be fined not more than $2,500."); *see also S. Snow*, 829 F. Supp. 2d at 453 n.14 ("Of course, a false claim that a work is copyrighted or patented, like a false claim that a mark is federally registered, is a statement that admits of empirical verification."). Accordingly, the Court **DENIES** this portion of Defendants' MTD.

## II. Statutory Fees and Damages Under the Copyright Act

Defendants also argue that Plaintiff is not entitled to statutory fees and damages under the Copyright Act. Defendants claim that, during pre-filing communications, Plaintiff appears to have agreed and evidently deleted several references to statutory damages and attorneys' fees under the Copyright Act in its FAC, though some remain. (MTD 28, ECF No. 24-1.) Plaintiff responds that it is indeed not seeking statutory damages under the Copyright Act, and that any reference to statutory damages in the FAC were hold-overs from the previous Complaint. (Opp'n 27, ECF No. 30.) Accordingly, the Court **GRANTS** this portion of Defendants' MTD. Plaintiff will have an opportunity to amend these scrivener's errors in its SAC.

However, Defendants also argue that Plaintiff's request for attorneys' fees under the Lanham Act should be dismissed. (MTD 28–29, ECF No. 24-1; Reply 8, ECF No. 32.) The Court disagrees.

For one, as discussed, the Court finds that Plaintiff has, for the most part, adequately pled that Defendants' conduct violates the Lanham Act. *See supra* Part I. Additionally, the Lanham Act provides that a "court in exceptional cases may award reasonable attorney

---

[4] It bears repeating that Plaintiff is not asserting a claim for fraudulent copyright notice. Rather, Plaintiff asserts that Defendants' false use of a copyright notice is "part and parcel of [their] overall false advertising message." (Opp'n 19, ECF No. 30.)

fees to the prevailing party." 15 U.S.C. § 1117(a). "[D]istrict courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional, *Octane Fitness*, 134 S. Ct. at 1756, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016); *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.").

Here, Plaintiff has adequately pled that the case is exceptional, thus supporting its request for attorneys' fees under the Lanham Act. Among other things, Plaintiff alleges that "Defendants were willfully blind and acted in reckless disregard" of Plaintiff's rights, (FAC ¶ 22, ECF No. 15); Defendants falsely claimed an association with the Trump organization in an effort to sell their products, (*id.* ¶ 45); and Defendants engaged in a bait-and-switch advertising campaign in order to hide their infringement of Plaintiff's bobblehead and deceive consumers into purchasing a product they did not order, (*id.* ¶ 43). This is enough to allege an "exceptional case" under the Lanham Act at the pleading stage. Accordingly, the Court **DENIES** this portion of Defendants' MTD.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' MTD (ECF No. 24). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's FAC. Consistent with this Opinion, Plaintiff

///

///

///

**SHALL FILE** an amended complaint, if any, <u>on or before fourteen (14) days of the date on which this Order is electronically docketed</u>.

**IT IS SO ORDERED.**

Dated: May 8, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge